```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
JOE HAND PROMOTIONS, INC.,

            Plaintiff,                    MEMORANDUM & ORDER
                                              20-cv-822
      -against-


AHSHAR SYLVESTRE
Individually, and as officer, director,
shareholder, principal, manager and/or
member of The Juicy Box Bar LLC;

            and

THE JUICY BOX BAR LLC

            Defendants.
----------------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Joe Hand Promotions, Inc. ("Plaintiff") brings this action against The Juicy Box Bar LLC (the "Establishment") and against Ahshar Sylvestre, individually, and as an officer, director, shareholder, principal, manager and/or member of the Establishment, (collectively, "Defendants"), for alleging violations of the Federal Communications Act of 1934, 47 U.S.C. §§ 553, 605. (*See generally* EFC No. 1, Complaint dated February 14, 2020 ("Compl.").)

Upon failure of Defendants to appear, answer, or respond to the Complaint, Plaintiff now moves for (1) entry of a default judgment; (2) basic statutory damages in the amount of $10,000; and (3) enhanced statutory damages in the amount of $10,000 against

Defendants, jointly and severally, for the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II) and 47 U.S.C. § 605(a) (ECF No. 13-1, Plaintiff's Memorandum in Support of Motion for Default Judgment ("Pl. Mem.") at 9-10.) Defendants have not appeared, answered the Complaint, or submitted any opposition to Plaintiff's motions for entry of default judgment, despite being properly served with the summons and complaint and having received notice and an opportunity oppose the motion for a default judgment. (*See* ECF No. 5 Summons Issued as to Sylvestre and the Establishment; ECF Nos. 7 & 9, Summons Returned Executed; ECF No. 11-3, Certificate of Service of Request for Certificate of Default Judgment; ECF No. 13, Motion for Default Judgment at 2.)

For the reasons set forth below, the court grants Plaintiff's motion for entry of default judgment against Sylvestre and the Establishment, jointly and severally, and, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 47 U.S.C. § 605(a) orders that judgment be awarded in favor of Plaintiff in the amount of $4,200, comprised of basic statutory damages of $1,400 and enhanced statutory damages of $2,800.

**BACKGROUND**

I. Facts

Where a defendant defaults, a court must accept the plaintiff's well-pleaded factual allegations as true and draw

all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 200/9); *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-88 (2d Cir. 2015). The Court consequently accepts Plaintiff's well-pleaded factual allegations as true for the purpose of reviewing its motion for default judgment.

Plaintiff acquired the rights to distribute the Wilder vs. Breazeale Match, including all undercard matches and the entire television broadcast, held on May 18, 2019 (the "Program"), which was broadcasted via closed circuit television, cable, or satellite signal. (Compl. at ¶ 6.) The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. (*Id.* at ¶ 19.) Plaintiff contracted with various business entities in New York State, allowing those businesses to exhibit the Program to their patrons. (Compl. at ¶ 20.)

In order to combat signal piracy, Plaintiff enlisted independent auditors to identify and visit establishments that exhibited the Program without Plaintiff's authorization. (Pl. Mem. at 3.) Plaintiff provided the auditors with a confidential list of customers that were authorized to broadcast the Program to ensure that the auditors would visit only locations that were

3

not authorized to broadcast the Program. (ECF No. 13-4, Legal List; ECF No. 13-2, Hand Aff. at ¶ 8.) Plaintiff includes with his motion for default judgment a site inspection form filled out by one of the retained auditors, Guy Burkhart. (ECF No. 13-5, Site Inspection Form.) Mr. Burkhart states that on May 18, 2019, the night of the broadcast, he entered the Establishment and saw two projector screens exhibiting the Program. (*Id*.) He observed that the Establishment was streaming the Program via an Apple MacBook. (*Id*.) Mr. Burkhart was not required to pay a cover charge to enter the Establishment and estimated the capacity of the Establishment to be 101-200 people. (*Id*.)

Plaintiff alleges that Defendants and/or their agents unlawfully intercepted, received, and/or de-scrambled the Program's broadcast signal and thereafter exhibited the Program at the Establishment without Plaintiff's authorization. (Compl at ¶¶ 23-24.) Plaintiff further alleges that in order to broadcast the Program, Defendants either used an illegal satellite receiver, misrepresented the Establishment as a residence, or removed an authorized satellite receiver from a residence to the Establishment to intercept the broadcast. (*Id.* at ¶ 24.) According to Joe Hand, the owner of Joe Hand Promotions, the Program is not and cannot be mistakenly or innocently intercepted. (Hand Aff. ¶ 12.)

4

**II. Procedural History**

Plaintiff filed the instant action on February 14, 2020 and thereafter properly served the Summons and Complaint on Defendants (ECF No. 1, Compl.; ECF No. 5, Summons Issued as to Sylvestre and the Establishment; ECF Nos. 7 & 9, Summons Returned Executed as to Sylvestre and the Establishment.)  At Plaintiff's request, the Clerk of Court entered default against Defendants on April 29, 2020 in light of Defendants' failure to answer the Complaint or otherwise defend the action.  (ECF No. 12, Clerk's Entry of Default.)  On May 8, 2020, Magistrate Judge Peggy Kuo ordered that Plaintiff file a motion for default by July 10, 2020. (Dkt. Order 5/8/2020.)  On July 10, 2020, Plaintiff filed a motion for default judgment.  (ECF No. 13, Motion for Default Judgment.) To date, Defendants have not answered, or otherwise responded to Plaintiff's Complaint, or motion for entry of default judgment.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 55, a movant must complete a two-step process to obtain a default judgment. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 346-47 (E.D.N.Y. 2009).  First, the Clerk of the Court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

5

defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Second, upon the Clerk's entry of default, the movant "may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)." *Rodriguez*, 784 F. Supp. 2d at 123. "'The court is to exercise sound judicial discretion' in determining whether the entry of default judgment is appropriate." *Trs. of Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011) (quoting *Badian v. Brandaid Commc'ns Corp.,* No. 03-CV-2424, 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004)), *adopted by* 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011). "In evaluating a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), the [c]ourt must accept as true the well-pleaded allegations in the complaint," except those relating to damages. *Id.* at *2 (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 154–55 (2d Cir. 1999)).

Here, the Clerk of the Court entered a default against Defendants on April 29, 2020, and Plaintiff thereafter filed the unopposed motion for default judgment presently before the court. As previously noted, Defendants have neither appeared nor moved to vacate the Clerk's entry of default. Consequently, Plaintiff has completed the necessary steps to obtain a default

6

judgment. *See Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05-CV-4778, 2007 WL 3046359, at *2 (E.D.N.Y. Oct. 16, 2007) ("In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default.") (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).

I.  **Corporate Liability of the Establishment**

Defendants' default in this case, however, "does not necessarily conclusively establish . . . defendant[s'] liability." *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-CV-1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007). As such, this court "must still determine whether . . . plaintiff has stated a cause of action." *Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, No. 08-CV-2325, 2009 WL 982424, at *3 (E.D.N.Y. Apr. 10, 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *Philip Gen. Constr.*, 2007 WL 3124612, at *3 ("Nevertheless, '[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" (alteration in original) (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989))).

7

Here, Plaintiff's Complaint alleges that the Establishment violated either 47 U.S.C. § 553 or 47 U.S.C. § 605. (Compl. at ¶¶ 25-35; Pl. Mem. at 2.)  Section 553(a)(1) provides that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553.  Section 605(a) provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605.

Sections 553 and 605 are not mutually exclusive, and both statutes apply when television programming is transmitted over *both* cable and satellite. *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996); *Kingsvision Pay-Per-View Corp. v. Keane*, No. 02-CV-5173, 2006 WL 1704474, at *3 (E.D.N.Y. June 16, 2006) ("[S]ections 553 and 605 are not mutually exclusive and when certain television programing is transmitted or intercepted over both cable and satellite mediums, both statutes

8

apply."). Plaintiff, however, acknowledges that it is unaware of the exact method by which the Establishment intercepted the Program and specifically notes that:

> Prior to engaging in discovery, Plaintiff is unable to determine the manner in which Defendants obtained the Broadcast. However, it is logical to conclude that Defendants utilized one of the above described methods or another to intercept and exhibit the Broadcast [referring to either an intercepted signal via cable or via satellite transmission] without entering into an agreement to obtain it lawfully from Plaintiff, the legal rights holder for commercial exhibition.

(Compl. at ¶ 24.)

Moreover, in its default motion, Plaintiff has elected to recover damages from both Defendants under § 605, rather than § 553. (Pl. Mem. at 6 ("Through Defendants' admissions, Defendants have admitted to the interception of radio and satellite communication and therefore Plaintiff has established the elements of §605 and elects to recover under the §605."). Accordingly, the court will assess the Establishment's liability under § 605.

Plaintiff's undisputed allegations and unopposed submissions establish that the Establishment violated § 605. Although by its text, § 605 applies explicitly to radio transmissions, courts have held that § 605 applies to cases involving "cable-borne transmissions [that] originate as satellite transmissions." *Keane*, 2006 WL 1704474, at *3 (citing *Sykes*, 75

F.3d at 130). Here, Plaintiff obtained exclusive distribution rights to the Program and subsequently entered into subsequent agreements with various commercial entities in New York State. (Compl. ¶¶ 19-20.) These subsequent agreements permitted authorized commercial entities to broadcast the Program to their patrons. (*See id.*) As alleged in the Complaint, the Establishment, without entering into a sub-licensing agreement or obtaining Plaintiff's authorization, knowingly and willfully intercepted, received, or de-scrambled the Program's broadcast signal via satellite transmission and thereafter exhibited the Program to its patrons for commercial advantage and private financial gain. (*Id.* ¶ 23.) According to Plaintiff, the Establishment likely utilized an illegal satellite receiver, misrepresented itself as a residence, or impermissibly utilized a residential satellite receiver to intercept the Program's broadcast signal. (*Id.* ¶ 24.) Furthermore, as observed by independent auditor Mr. Burkhart, the Establishment exhibited the Program on a projector screen on May 18, 2019. (*See* ECF No. 13-5, Site Inspection Report.) Taken together, Plaintiff's allegations demonstrate that the Establishment is liable for damages under § 605.

  **II. Individual Liability of Sylvestre**

    Plaintiff also names Sylvestre as an "officer, director, shareholder and/or principal" of the Establishment. (*See* Compl. ¶

10

8.) Plaintiff alleges that, upon information and belief, Sylvestre was the individual with supervisory capacity and control over activities occurring within the Establishment on May 18, 2019. (*Id.* ¶ 9.) Plaintiff further alleges that Sylvestre received a financial benefit from the operations of the Establishment on the night of May 18th. (*Id.* ¶ 10.)

"Individual liability under the Cable Act requires that the individual authorize the underlying violations." *J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (citing *J&J Sports Prods., Inc. v. Benson,* No. 06-CV-1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007)). "Put differently, the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct." *Id.* (citing *Softel, Inc., v. Dragon Med. & Scientific Commc'ns, Inc.,* 118 F.3d 955, 971 (2d Cir. 1997)).

The undisputed allegations in the Complaint establish that Sylvestre is an officer, director, shareholder and/or principal of the Establishment; that Sylvestre had supervisory capacity and control over the activities in the Establishment on the date of the alleged violation; and that he received a financial benefit as a result of the unauthorized broadcast. (*See* Compl. ¶¶ 8-10); *see Benson*, 2007 WL 951872, at *7. Therefore, the court

11

determines that Sylvestre is jointly and severally liable with the Establishment for the violation of 47 U.S.C. § 605(a) discussed above. Accordingly, the court finds that Plaintiff's award be limited to a single and joint recovery against the individual Defendant, Sylvestre, and the corporate Defendant, the Establishment.

### III. Damages

As previously noted, in the context of a motion for default judgment, allegations pertaining to liability are deemed admitted, but those pertaining to damages must be proven by the movant. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). After liability is determined, damages must be established "to a 'reasonable certainty.'" *Duro v. BZR Piping & Heating Inc.*, No. 10-CV-879, 2011 WL 710449, at *2 (E.D.N.Y. Jan. 26, 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)), *adopted by* 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011). The court need not hold a hearing to determine damages "as long as it [has] ensured that there [is] a basis for damages specified in the default judgment." *Id*. (alterations in original). When evaluating damages, the court

12

"may rely on affidavits or documentary evidence." *Id.* (citing *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d. Cir. 1993); *Chun Jie Yin v. Kim*, No. 07-CV-1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008)).

### A. *Basic Statutory Damages*

Plaintiffs who seek compensation for damages and lost profits under § 605 may elect to seek either actual damages and lost profits or basic statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i); *see also Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999). Plaintiff has opted for statutory damages. (Pl. Mem. at 9.) Where, as here, a party elects to recover statutory damages, it may recover a damages award within the statutory range of $1,000 to $10,000 for each violation of § 605(a). 47 U.S.C. § 605(e)(3)(C)(i)(II). "The amount of damages to be awarded pursuant to § 605 rests in the sound discretion of the court." *J&J Sports Prods., Inc. v. Hot Shots, Inc.*, No. 09-CV-1884, 2010 WL 3522809, at *2 (E.D.N.Y. Apr. 27, 2010) (citing 47 U.S.C. § 605(e)(3)(C)(i)(II)), *adopted by* 2010 WL 3523003 (E.D.N.Y. Sept. 2, 2010).

As other courts have noted, § 605 provides no statutory definition of the term "violation." *See, e.g.*, *Garden City Boxing Club, Inc. v. Perez*, No. 05-CV-3713, 2006 WL 2265039, at *5

13

(E.D.N.Y. Aug. 8, 2006). "However, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Id.* "In determining the amount of damages that can be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court." *Id.* Here, the unauthorized broadcast of the Program occurred and was aired on May 18, 2019 thus taking the form of one continuous, night-long event. (*See* Compl. ¶ 6; ECF No. 13-5, Site Inspection Form.) As such, the court finds that Defendants are subject to liability for one violation of § 605.

"Although § 605 provides little guidance as to how to set damages within the statutory range [for each violation], 'courts in [the Second Circuit] have relied upon one of two methods of calculating statutory damages in cases involving the unauthorized receipt and exhibition of pay-per-view events'" by commercial establishments. *Kingvision Pay-Per-View Ltd. v. Autar*, 426 F. Supp. 2d 59, 63 (E.D.N.Y. 2006) (quoting *Garden City Boxing Club, Inc. v. Morales*, No 05-CV-64, 2005 WL 2476264, at *6 (E.D.N.Y. Oct. 7, 2005)); *see also Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 115 (E.D.N.Y. 2011); *Googies Luncheonette,* 77 F. Supp. 2d at 489. The first method assesses the award of damages based upon the number

14

of patrons in the establishment who viewed the unauthorized broadcast. *See, e.g., Googies Luncheonette*, 77 F. Supp. 2d at 489 (collecting cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding damages on a per-patron basis); *Cablevision Sys. Corp. v. 45 Midland Enters.*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).  The second method awards a flat sum for each violation. *E.g., Googies Luncheonette*, 77 F. Supp. 2d at 489-90 (collecting cases); *see also Entm't by J&J, Inc. v. Suriel*, No. 01-CV-11460, 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding a flat sum of $11,000 for basic and enhanced damages); *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2001); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. 88-CV-2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat sum "based on the Court's view of the equities and not the estimate of the number of patrons").

Courts have used the first approach and multiplied the number of patrons by a set sum – the price to view the event at home on a pay-per-view channel. *See, e.g., Kingvision Pay-Per-View Ltd. v. Cazares*, No. 05-CV-2934, 2006 WL 2086031, at *3-4 (E.D.N.Y. July 25, 2006) (54.95 per patron); *J&J Sports Prods., Inc. v. Arhin,* No. 07-CV-2875, 2009 WL 1044500, at *6 (E.D.N.Y. Apr. 17, 2009) (same).  This method of calculating damages is based

on the theory that the patrons who watched the unauthorized broadcast would have ordered it individually for residential use. *See, e.g.*, *Googies Luncheonette,* 77 F. Supp. 2d at 490.

Here, Plaintiff's motion for default judgment seeks basic statutory damages under § 605(e)(3)(C)(i)(II) in the amount of $10,000. The Site Inspection Form provided by the auditor does not provide the total number of patrons who viewed the Program on May 18, 2019. Plaintiff, however, states that "[f]or Defendants to properly obtain the rights to the Program, they would have needed to spend approximately $1,400.00 because Defendants' establishment seats up to two hundred (200) people." (Pl. Mem. at 10.) Plaintiff's motion asks the court to assume that the Establishment reached capacity the night of May 18, 2019. (*See generally* Pl. Mem.) However, this court cannot credit Plaintiff's assumption that because the Establishment's capacity is 200 patrons, the court should use this figure to calculate statutory damages.[1]

This Court may determine the statutory damages amount based on the licensing fee Defendants would have paid to show the Program legally and the balance of equities. Plaintiff provides evidence that if Defendants were to have purchased the rights

---

[1] If we assume that the Establishment reached capacity and there were 200 patrons in attendance the night of the Program, the calculated damages would equal $10,990 ($54.95 X 200 patrons), exceeding the statutory maximum of $10,000. 47 U.S.C. § 605(e)(3)(C)(ii).

16

legally, he would have paid $1,400. (*See* ECF No. 13-3, Rate Card.) This amount is greater than the statutory minimum of $1,000 and is thus sufficient. 47 U.S.C. § 605(e)(3)(C)(ii). The Court will award Plaintiff statutory damages in the amount of $1,400.

    **B.**   ***Enhanced Statutory Damages***

Plaintiff further seeks enhanced statutory damages for willfulness pursuant to § 605(e)(3)(C)(ii) in the amount of $10,000. (Pl. Mem. at 9-10.) The court, in its discretion, may award an enhancement of statutory damages of up to $100,000 where Plaintiff demonstrates that Defendants' violation was willful and committed for the "purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The broadcast of an event without authorization is a deliberate act, and thus establishes willfulness. *See Taco Rapido Rest.*, 988 F. Supp. at 111; *Googies Lucheonette*, 77 F. Supp. 2d at 490-91 ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Furthermore, the Establishment realized financial gain by broadcasting the Program because the broadcast "most likely led to an increased number of patrons, and thus to an increase in profits from food and beverages," even if the Establishment did not advertise the Program or charge a cover fee. *Taco Rapido Rest.*,

988 F. Supp. at 111; *cf. J&J Sports Prods. v. Alvarez,* No. 07-CV-8852, 2009 WL 3096074, at *5 (S.D.N.Y. Sep. 25, 2009) (inferring that the illegal broadcast of the event induced customers to patronize the establishment and increased the sale of food and beverages). Consequently, Plaintiff is entitled to a further enhancement of the basic statutory damages award because the record reflects that the Establishment affirmatively and willfully intercepted and broadcasted the Program for financial gain, and that there was no way that the Establishment could have inadvertently intercepted Plaintiff's broadcast. (Hand Aff. ¶ 12; Compl. ¶ 24 (listing the various illegal ways to intercept a broadcasting program's signal.)).

In circumstances demonstrating such willful and purposeful violation, "'it is appropriate to assess enhanced damages in conjunction with statutory damages.'" *135 Hunt Station Billiard, Inc.*, 2012 WL 4328355, at *5 (quoting *J&J Sports Prods., Inc. v. Welch*, No. 10-CV-159 (KAM), 2010 WL 4683744, at *5 (E.D.N.Y. Nov. 10, 2010)). "Courts typically fix the amount of enhanced damages as a multiple of the [basic] statutory damages award." *Id.* "The multiples most commonly used by [the Eastern District of New York] are either two or three times the [basic] statutory damages." *Id.* Here, the court, in its discretion, finds that Plaintiff is entitled to enhanced damages in the amount of

18

$2,800, or double the basic statutory damages award of $1,400, for Defendants' willful violation of the Federal Communications Act. *See, e.g.*, *J&J Sports Prods., Inc. v. Zevallos*, No. 10-CV-4049, 2011 WL 1810140, at *4 (E.D.N.Y. Apr. 22, 2011) (recommending an enhanced damages award of two times the basic statutory damages), *adopted by* 2011 WL 1807243 (E.D.N.Y. May 11, 2011); *Joe Hand Promotions, Inc. v. La Nortena Rest. Inc.*, No. 10-CV-4965, 2011 WL 1594827, at *5 (E.D.N.Y. Mar. 28, 2011) (same), *adopted by* 2011 WL 1598945 (E.D.N.Y. Apr. 27, 2011).  Accordingly, the court awards Plaintiff $1,400 in basic statutory damages and $2,800 in enhanced statutory damages, for a total statutory damages award of $4,200.00.

**CONCLUSION**

For the foregoing reasons, the court grants Plaintiff's motion for default judgment against Defendants and respectfully directs the Clerk of the Court to enter judgment in favor of Plaintiff and against the Establishment and Sylvestre, jointly and severally, in the total amount of $4,200, comprised of basic statutory damages of $1,400, and enhanced damages of $2,800. The Clerk of the Court is respectfully requested to close this case. Plaintiff is ordered to serve a copy of this Memorandum and Order and the judgment on both Defendants and file a declaration of service once the Clerk of Court enters judgment. **SO ORDERED.**

Dated:    March 3, 2021
         Brooklyn, New York

                                    /s/
                          KIYO A. MATSUMOTO
                          United States District Judge
                          Eastern District of New York